UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED
MAR 23 2015
CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY

UNDERWRITERS AT LLOYD'S, )
SYNDICATE 1036, )
　　　　　　　　　　　　　　　　)
　　　　　　　　　Plaintiff, )
　　　　　　　　　　　　　　　　)
　　　　　　v. )  Civil No. 12-1155 (RCL)
　　　　　　　　　　　　　　　　)
COASTAL PRODUCTION SYSTEMS, LLC, )
*et al.*, )
　　　　　　　　　　　　　　　　)
　　　　　　　　　Defendants. )

## MEMORANDUM OPINION

Pending before the Court are defendant Coastal Production Systems, LLC's motion for summary judgment [ECF No. 33] and plaintiff Underwriters at Lloyd's, Syndicate 1036's cross-motion for summary judgment [ECF No. 44]. For the following reasons, the Court will grant Coastal's motion and deny Underwriters' motion.

## I. BACKGROUND

### A. The Insurance Policy

This lawsuit arises out of an insurance policy issued to Coastal and insured by Underwriters. The policy, numbered 10CGLN8233 ("the policy"), states that Underwriters "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Policy of Insurance at 1 of 15, ECF No. 33-1. It also imposes on Underwriters a duty to defend persons who are defined as "insured" against "suits" seeking such damages. *Id.* An "insured" is defined—in the portion of the policy relevant to this suit—as Coastal, persons using a "hired auto" with Coastal's

permission, and "any other person or organization, but only with respect to their liability arising out of acts or omissions" by Coastal or a person using a "hired auto" with Coastal's permission. *Id.* On the other hand, an insured does not include a "person engaged in the business of his or her employer with respect to 'bodily injury' to any co-employee of such person injured in the course of employment." Endorsement No. 31 at 2 of 2, ECF No. 33-4.[1]

The policy also specifies that it only covers bodily injury or property damage occurring in the "coverage territory" and during the "policy period." Policy of Insurance at 1 of 15. The coverage territory includes the United States. *Id.* at 12 of 15. The policy period is December 17, 2010 to December 17, 2011.

The policy includes a number of exclusions that define specific circumstances when damages for bodily injury will not be covered. One such exclusion, exclusion 2.g to Coverage A of Section I, states that bodily injury is not covered if it arises out of the ownership, maintenance, use, or entrustment to others of automobiles. *Id.* at 4 of 15.

These exclusions are modified by "endorsements." Endorsement No. 31 modifies exclusion 2.g. It states that the exclusion does not apply when bodily injury arises out of the "maintenance or use of a 'hired auto' by you or your employees in the course of your business." Endorsement No. 31 at 1 of 2. Hired auto is defined to include any auto "you lease, hire, or borrow," except that it does not include autos leased, hired, or borrowed from Coastal's employees, members of their households, or Coastal's partners or executive officers. *Id.* at 2 of 2.

---

[1] Part IV of Endorsement No. 31 contains a special definition of "insured" for coverage arising out of Part I of Endorsement No. 31, the hired auto liability provision. Endorsement No. 31 at 1 of 2. Because coverage in this case arises out of Endorsement No. 31, that definition applies here.

2

### B. The Underlying Lawsuit

The event that precipitated this lawsuit is the filing of a different one in Texas court. Roy L. Wells filed suit in a Texas district court, alleging various tort-based causes of action against Christopher Ryan Harrell, Valley Pump Rentals, LLC, and Coastal Production Systems, LLC.[2] The claims arise out of an automobile collision that occurred on July 17, 2011 in Texas. Pl.'s Second Am. Pet. at 3–4, *Roy L. Wells v. Christopher Ryan Harrell, et al.*, Cause No. 11-10-1050-CVA (Tex. Dist. Ct. Aug. 20, 2014), ECF No. 33-3. Wells was gravely injured when his truck collided at high speed with one driven by Harrell. *Id.* The wreck occurred after Harrell's failed attempt to execute a passing maneuver that Wells characterizes as unsafe. *Id.* at 4. Shortly before the collision, Harrell was served alcoholic beverages at a nearby bar and became "intoxicated to the point that he presented a clear danger to himself and others." *Id.*

Harrell was Coastal's employee at the time of the collision. *Id.* He was driving a truck provided by Coastal "as part of the course of" its business. *Id.* at 5. Coastal entrusted Harrell with this truck, in part, because he was "subject to work 24 hours a day, seven days a week." *Id.* Coastal borrowed the truck from its owner, Valley Pump Rentals, LLC. *Id.* at 4.

### C. The Present Dispute

Underwriters filed this lawsuit seeking a declaration that it does not have a duty to defend Coastal in the underlying litigation or to indemnify Coastal for damages that may arise from that litigation. Defendants Coastal and Wells counterclaimed for a declaration that the duties to defend and indemnify are triggered in this case, both as to Coastal and Harrell. Underwriters and Coastal have now both moved for summary judgment.

## II. LEGAL STANDARD AND APPLICATION

---

[2] For reasons explained later, the Court assumes the truth of the factual allegations contained in Wells' state court petition. It shall refrain from repeatedly noting that the narrative discussed herein is merely alleged and has not yet been proved.

3

### A. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A motion for summary judgment is only defeated by a "genuine" dispute as to a "material" fact; the "mere existence of *some* alleged factual dispute" is not enough. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). Material facts are those which could affect the outcome of a case, as determined by the substantive law underlying the suit. *Id.* at 248. A dispute is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

### B. Choice of Law

Before considering the substance of the parties' competing motions for summary judgment, the Court must determine what law shall govern the issues. Underwriters has requested that the Court apply Louisiana law, while Coastal and Wells counter that Texas law should be applied.

Federal courts sitting in diversity apply the choice of law rules of the forum state. *Duhon v. Union Pac. Res. Co.*, 43 F.3d 1011, 1013 (5th Cir. 1995) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Therefore, Texas choice of law rules apply in this case.

Texas courts only undertake a choice of law analysis if it appears there is a true conflict between the bodies of law being considered. *Vandeventer v. All Am. Life & Cas. Co.*, 101 S.W.3d 703, 712 (Tex. App.—Fort Worth 2003). If the determination of the issues presented would be identical under either state's laws, a court need not decide which state's laws apply. *Id.* A party advocating the application of non-Texas law has the burden to show that it would lead to

4

a different outcome. *Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc.*, 246 S.W.3d 42, 53 (Tex. 2008).

For the reasons that follow, the Court concludes that there is no meaningful difference between Texas and Louisiana law as to the issues presented by these motions for summary judgment. Therefore, the Court shall not yet decide whether Texas or Louisiana law should apply in this case.

### C. Duty to Defend Coastal

The Court will briefly describe the legal standards applicable to deciding the duty to defend under Texas and Louisiana law before applying those standards to the facts and circumstances in this case.

#### 1. Texas

In Texas, the insurer's duty to defend an insured from a lawsuit is determined according to the factual allegations in the underlying pleadings and the language of the insurance policy. *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997) (per curiam). This is called the "eight corners" rule. *Id.* The insurer must defend the insured "if the facts alleged in the petition, taken as true, potentially assert a claim for coverage under the insurance policy." *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 840 (5th Cir. 2012). The insured has the "initial burden of establishing that a claim against it is potentially within the policy's coverage." *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004). Once that burden has been met, "to defeat the duty to defend, the insurer bears the burden of showing that the plain language of a policy exclusion or limitation allows the insurer to avoid coverage of *all* claims, also within the confines of the eight corners rule." *Id.* (emphasis in original).

The eight corners inquiry is broadly favorable to the insured. The court should not consider facts outside of the pleadings, even those "ascertained before suit [or] developed in the course of litigation." *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008). Allegations in the pleadings are "liberally construed in favor of coverage." *GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006). Any doubts about whether an underlying suit gives rise to a duty to defend are resolved in favor of the insured. *Nat'l Union Fire*, 939 S.W.2d at 141. Thus, an insurer's duty to defend will generally be negated only by allegations in the underlying pleadings that "clearly bring the case . . . without the coverage." *Id.* (quoting *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965)).

While a court must assume the truth of factual allegations in the underlying pleadings and may also make reasonable inferences that flow from those facts, it may not "(1) read facts into the pleadings, (2) look outside the pleadings, or (3) imagine factual scenarios which might trigger coverage." *Star-Tex Res., L.L.C. v. Granite State Ins. Co.*, 553 F. App'x 366, 370 (5th Cir. 2014) (unpublished op.) (quoting *Guar. Nat'l Ins. Co. v. Azrock Indus.*, 211 F.3d 239, 243 (5th Cir. 2000)). Courts also should not credit the legal theories or conclusions asserted in the underlying pleadings. *Northfield Ins. Co.*, 363 F.3d at 528.

### 2. Louisiana

The legal standards governing the duty to defend under Louisiana law are substantially the same as those applicable under Texas law. The duty to defend binds the insurer unless the allegations in the underlying pleadings, taken as true, "unambiguously exclude[] coverage" under the insurance policy at issue. *Elliott v. Continental Cas. Co.*, 949 So.2d 1247, 1250 (La. 2007) (quoting *Steptore v. Masco Const. Co.*, 643 So.2d 1213, 1218 (La. 1994)). Put another

6

way, the "duty to defend arises whenever the pleadings against the insured disclose even a possibility of liability under the policy." *Id.* Just as Texas law requires, the pleadings are "liberally interpreted" in favor of the insured. *Yount v. Maisano*, 627 So.2d 148, 153 (La. 1993). Extrinsic evidence may not be considered. *Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 872 (5th Cir. 2009).

### 3. Application

There are a few ways in which the allegations of the underlying lawsuit clearly come within the four corners of the insurance policy. The underlying lawsuit alleges bodily injury arising out of an incident occurring within the coverage territory and during the policy period. Pl.'s Second Am. Pet. at 3–5 (alleging bodily injuries arising out of an automobile accident on July 17, 2011 in Texas). It also alleges injury arising out of the use of a "hired auto" by one of Coastal's employees. *Id.* (alleging that the other truck in the collision was borrowed by Coastal from Valley Pump Rentals and driven by Harrell, a Coastal employee). In these respects, the state court pleadings, taken as true, come within the policy's provision for hired auto liability coverage, set forth at Section I, Coverage A, Endorsement No. 31.[3]

The dispute between the parties largely centers on the last remaining requirement under Endorsement No. 31: that the use of the hired auto be "in the course of your business." Underwriters contends that the underlying state court petition does not sufficiently allege that the truck was being used in the course of Coastal's business at the time of the collision. Underwriters further argues that the allegations that Harrell was drinking at a bar before the

---

[3] Coastal discusses its entitlement to coverage under the "non-owned auto" liability provision of Endorsement No. 31. The allegations of the second amended petition do not come within that provision because non-owned auto coverage only applies to automobiles that Coastal did not "own, lease, hire or borrow." Endorsement No. 31 at 2 of 2. The second amended petition states that Harrell's truck was "borrowed" from Valley Pump Rentals.

7

wreck and was intoxicated foreclose the possibility that Harrell could have been acting within the course and scope of Coastal's business at the time of the collision.

Underwriters' arguments do not meet the heavy burden of negating the defendants' initial showing of a duty to defend. Under both Texas and Louisiana law, the duty to defend will arise if there is even the *potential* for coverage or unless coverage is *unambiguously excluded*. Coverage is excluded, for example, when a plaintiff pleads facts that, if proven true, make it impossible to find a duty to defend. In one such case, *Farmers Texas County Mutual Insurance Co. v. Griffin*, 955 S.W.2d 81 (Tex. 1997) (per curiam), the Texas Supreme Court held that an insurer had no duty to defend because the allegations in the underlying pleadings of a drive-by shooting only indicated intentional behavior, not negligence. *Id.* at 82–83. Thus, the underlying claim was within the policy's exclusion for intentional acts.

Here, however, the underlying allegations are that (1) Coastal provided the truck to Harrell, (2) Harrell used it with Coastal's permission pursuant to his obligation to be subject to work 24 hours a day, and (3) that he was using it in the course of Coastal's business. These allegations are sufficient to raise the mere possibility of coverage. *See, e.g., Texas Emp'rs Ins. Ass'n v. Monroe*, 216 S.W.2d 659, 661–62 (Tex. Civ. App.—Galveston 1948) (holding that an employee was within the course of employment largely on the basis of his being "on continuous duty, 24 hours a day, subject to call at all times"); *Soileau v. D & J Tire, Inc.*, 702 So.2d 818, 821 (La. Ct. App. 1997) (concluding that evidence supported finding an employee was in the course and scope of his employment, in large part, on the ground that he was on call to his employer at the time of the underlying collision).

Underwriters' argument that the allegations in the second amended petition would not, if proven true, be sufficient to establish course and scope of employment is irrelevant. The duty to

defend will arise if there is a possibility of coverage in the underlying suit; it will only be foreclosed if the case is clearly outside of coverage or if coverage is unambiguously excluded. *Nat'l Union Fire*, 939 S.W.2d at 141; *Elliott*, 949 So.2d at 1250. Generally, the insurer is obligated to defend if the "complaint does not state facts sufficient to clearly bring the case within or without the coverage." *Nat'l Union Fire*, 939 S.W.2d at 141 (quoting *Heyden*, 387 S.W.2d at 26). All doubts are resolved in favor of the insured. *Id.*

Furthermore, Underwriters is incorrect that the allegations that Harrell was drinking at a bar and was intoxicated prior to the collision preclude a finding that Harrell was in the course of his employment at the time of the collision. Texas and Louisiana courts have both held that the mere fact that an employee was intoxicated does not determine, on its own, whether that employee was within the course and scope of employment. *G. & H. Equip. Co. v. Alexander*, 533 S.W.2d 872, 876 (Tex. Civ. App.—Fort Worth 1976) (holding that an employer is not exonerated from liability for an employee's tort simply because that employee was intoxicated at the time); *Boutte v. Mudd Separators, Inc.*, 236 So.2d 906, 910 (La. Ct. App. 1970) (concluding that, although defendant had failed to prove intoxication, the evidence showed that at the time of the tort, "plaintiff had ended his drinking activities and was engaged in the course of his employment"); *Bell v. Hurstell*, 743 So.2d 720, 721–22 (La. Ct. App. 1999) (holding that an employee was not acting in the course and scope of employment at the time of an automobile collision because of the "general rule [] that an employee going to and from work is not in the course and scope of employment," not because she was allegedly intoxicated). Also, given that Harrell was a salesman and service representative for Coastal, it is possible that his visit to the bar and his subsequent drive was in furtherance of Coastal's business, at least on the basis of the

bare allegations of the second amended petition. Therefore, the facts as pled do not necessarily preclude coverage.

Underwriters has asked the Court to consider extrinsic evidence pursuant to a narrow exception to the eight corners rule under Texas law. That exception arises in situations "when it is initially impossible to discern whether coverage is potentially implicated *and* when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case." *Northfield Ins. Co.*, 363 F.3d at 531 (emphasis in original). Such fundamental coverage issues include "(1) whether the person sued has been specifically excluded by name or description from any coverage, (2) whether the property in suit is included in or has been expressly excluded from any coverage, and (3) whether the policy exists." *Id.* at 530. The Texas Supreme Court has held that "overlapping extrinsic evidence"—evidence that is relevant to both coverage issues and the merits of the underlying litigation—may not be used in exception to the eight corners rule. *GuideOne*, 197 S.W.3d at 309. This is because to hold otherwise would "pose[] a significant risk of undermining the insured's ability to defend itself in the underlying litigation." *Id.*

The answer to the question of whether Harrell was in the course and scope of his employment at the time of the collision goes to a merits issue in the underlying litigation. Specifically, the question implicates Coastal's vicarious liability for Wells' injuries. It would be contrary to the purpose and spirit of the eight corners rule to allow for the introduction of extrinsic evidence as to this merits-related question. *See Tri-Coastal Contractors, Inc. v. Hartford Underwriters Ins. Co.*, 981 S.W.2d 861, 863 (Tex. App.—Houston [1st Dist.] 1998) ("The original purpose of the eight-corners rule was to preclude an insurance company from refusing to defend an insured based on the lack of merit of the plaintiff's case.").

### D. Duty to Defend Harrell

Evaluation of the state court petition and the policy indicates that Harrell is also an "insured" under the hired auto liability coverage set forth in Endorsement No. 31. He was, according to the allegations of the state court petition, using a hired auto with Coastal's permission. There is no allegation that Wells was a co-employee of Harrell's. Therefore, Harrell appears to be entitled to a defense, provided by Underwriters, in the underlying litigation. As set forth in the accompanying Order, the Court intends to grant summary judgment on Wells' counterclaim for declaratory judgment that Underwriters must defend Harrell in the underlying lawsuit. Underwriters must file a response, if any, within 14 days arguing why summary judgment should not be granted.

### E. Duty to Indemnify

Underwriters also moves for summary judgment on the issue of its duty to indemnify Coastal in the underlying lawsuit. Under both Texas and Louisiana law, the duty to indemnify is separate and distinct from the duty to defend. *Griffin*, 955 S.W.2d at 82; *Elliott*, 949 So.2d at 1250. Therefore, an insurer may ultimately be held to have one duty but not the other. *Griffin*, 955 S.W.2d at 82; *Elliott*, 949 So.2d at 1250. This is in keeping with the wording of the insurance contract itself, which is the basis for these duties. *See* Policy of Insurance at 1 of 15 (describing Underwriters' separate duties to pay damages for which Coastal becomes legally obligated and to defend suits seeking such damages).

It is generally premature to decide whether an insurer has a duty to indemnify prior to the adjudication of the underlying lawsuit's merits. *See GuideOne*, 197 S.W.3d at 310 (holding that the duty to indemnify under Texas law is controlled by the "facts actually established in the underlying suit"); *Quinlan v. Liberty Bank & Trust Co.*, 575 So.2d 336, 348–49 (La. 1990)

(holding that the earliest time an insurer is obligated to pay on a policy is when liability attaches). Again, this fits with the language of the insurance policy at issue, which states that Underwriters' payment obligation only arises once Coastal has become "legally obligated" to pay covered damages. Policy of Insurance at 1 of 15.

Underwriters points to a line of Texas cases that authorize earlier consideration of the duty to indemnify "when the insurer has no duty to defend *and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify.*" *Griffin*, 955 S.W.2d at 84 (emphasis in original). This rule is inapposite because Underwriters has a duty to defend Coastal in the underlying lawsuit. Consideration of the duty to indemnify is premature. Summary judgment is denied as to that issue.

### III. CONCLUSION

For the foregoing reasons, the Court concludes that it will grant Coastal's motion for summary judgment. Underwriters has a duty to defend Coastal in the underlying state court lawsuit brought by Wells. The Court also intends to grant summary judgment regarding Underwriters' duty to defend Harrell, unless Underwriters files a response in opposition within 14 days demonstrating why it should not be obligated to defend Harrell under the policy. Finally, the Court will deny Underwriters' motion for summary judgment. Underwriters has a duty to defend Coastal and consideration of the duty to indemnify Coastal in the underlying lawsuit is premature at this time.

The Court shall, subject to the outstanding issue of Underwriters' duty to defend Harrell, stay these proceedings until the conclusion of the underlying state court litigation. At that time, the parties shall notify the Court that this case is ready to proceed.

An Order in accord with this Memorandum Opinion shall issue this date.

<u>   3/23/15</u>
Date

*Royce C. Lamberth*
ROYCE C. LAMBERTH
UNITED STATES DISTRICT JUDGE